UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

———————————————————— x
PAUL ANSFIELD, On Behalf of Himself and All : 
Others Similarly Situated, :
: Civil Action No. 2:11-cv-00173
Plaintiff, :
v. : **CLASS ACTION COMPLAINT**
:
OMNICARE, INC., JOEL GEMUNDER, DAVID : **JURY TRIAL DEMANDED**
W. FROESEL, JR., and JOHN L. WORKMAN, :
:
Defendants. :
:
:
:
———————————————————— x
JACKSONVILLE POLICE & FIRE PENSION :
FUND, On behalf of Itself and Others Similarly :
Situated, :
: Civil Action No. 2:11-cv-00315-DLB-CJS
:
Plaintiff, : **CLASS ACTION COMPLAINT**
v. :
: **JURY TRIAL DEMANDED**
OMNICARE, INC., JOEL GEMUNDER, DAVID :
W. FROESEL, JR., and JOHN L. WORKMAN, :
:
Defendants. :
:
:
———————————————————— x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF JACKSONVILLE
POLICE AND FIRE AND AUSTIN POLICE FOR CONSOLIDATION,
APPOINTMENT AS CO-LEAD PLAINTIFFS
<u>AND APPROVAL OF CHOICE OF LEAD COUNSEL</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................................1

FACTUAL BACKGROUND..........................................................................................................3

ARGUMENT...................................................................................................................................7

    I.      THIS COURT SHOULD CONSOLIDATE RELATED ACTIONS .......................7

    II.     JACKSONVILLE POLICE AND FIRE AND AUSTIN POLICE SHOULD BE APPOINTED CO-LEAD PLAINTIFFS ................................................................8

           A.     The PSLRA's Lead Plaintiff Provisions .....................................................8

                  1.     The Institutional Investor Group Satisfies the PSLRA's Procedural Requirements ................................................................10

                  2.     The Institutional Investor Group Possesses the Largest Known Financial Interest in the Outcome of the Litigation ........................10

                  3.     The Institutional Investor Group Satisfies Rule 23's Typicality And Adequacy Requirements .........................................................11

    III.    PROPOSED CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED ........................................................................................................14

CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ohio Pub. Employees Ret. Sys. v. Fannie Mae*,
   357 F. Supp. 2d 1027 (S.D. Ohio 2005) ..................................................................11, 12, 13

*In re Am. Serv. Group*,
   3:06-00323, 2006 WL 2503648 (M.D. Tenn. Aug. 29, 2006).....................................................9

*In re American Medical Sys. Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ...........................................................................................12, 13

*In re Cardinal Health, Inc. Sec. Litig.*,
   226 F.R.D. 298 (S.D. Ohio 2005) ...........................................................................9, 11, 12, 13

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)..................................................................................................11

*Chisholm v. Transouth Fin. Corp.*,
   184 F.R.D. 556 (E.D. Va. 1999) ............................................................................................12

*In re Delphi Corp. Sec., Derivative & "Erisa" Litig.*,
   458 F. Supp. 2d 455 (E.D. Mich. 2006)...................................................................................11

*Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*,
   3:09-CV-00882, 2010 WL 1790763 (M.D. Tenn. Apr. 30, 2010) ..............................................9

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
   5:03 CV 2166, 2004 WL 3314943 (N.D. Ohio May 12, 2004)...................................12, 13, 14

*Huang v. Acterna Corp.*,
   220 F.R.D. 255 (D. Md. 2004)...............................................................................................12

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
   07-02830, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010).........................................9, 12, 14

*In re Royal Ahold N.V. Securities and ERISA Litig.*,
   219 F.R.D. 343 (D. Md. 2003)............................................................................................7, 12

*Stout v. J.D. Byrider*,
   228 F.3d 709 (6th Cir. 2000) ................................................................................................14

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999)......................................................................................7

**STATUTES**

15 U.S.C. §§78j(b) and 78t(a) ............................................................................................... 1, 8

15 U.S.C. §78u-4 .................................................................................................................. passim

**OTHER AUTHORITIES**

17 C.F.R. §240.10b-5 ................................................................................................................. 1

Fed. R. Civ. P. 23 .............................................................................................................. passim

Fed. R. Civ. P. 42(a). ............................................................................................................. 7, 8

Jacksonville Police and Fire Pension Fund ("Jacksonville Police and Fire") and City of Austin Police Retirement System ("Austin Police") (collectively, the "Institutional Investor Group"), pursuant to Section 21D(a)(3)(B) of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), respectfully submit this Memorandum of Law in support of their Motion for the entry of an order: (1) consolidating the Actions (defined below) and any related actions that may be filed; (2) appointing Jacksonville Police and Fire and Austin Police as Co-Lead Plaintiffs on behalf of themselves and all other similarly situated persons who purchased or otherwise acquired the common stock of Omnicare, Inc. ("Omnicare" or the "Company") from January 10, 2007 to August 5, 2010, inclusive (the "Class Period"), and incurred damages thereby; (3) approving the Institutional Investor Group's selection of the law firm of Spector Roseman Kodroff & Willis, P.C. as Lead Counsel and Goldenberg Schneider, LPA as Local Counsel for the Class; and, (4) grant such other relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

An initial complaint was filed against Defendants on August 24, 2011 (the "Action"). A related securities class action was subsequently filed on October 21, 2011 (collectively, these two actions are referred to herein as the "Actions"). The Actions were brought on behalf of purchasers of the common stock issued by Omnicare. Each alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b) and 78t(a), and Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

In accordance with the Exchange Act, as amended by the PSLRA, 15 U.S.C. §78u-4, and for the reasons set forth below, Jacksonville Police and Fire and Austin Police respectfully move this Court for an Order appointing them as Co-Lead Plaintiffs. Pursuant to the PSLRA, the

1

Court appoints as lead plaintiffs the movants possessing the largest financial interest in the outcome of the Actions and otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Jacksonville Police and Fire and Austin Police, with collective losses of $343,000[1] in connection with their purchases of Omnicare common stock during the Class Period, believe they are the "most adequate plaintiff" as defined by the PSLRA and should be appointed Co-Lead Plaintiffs of the consolidated Actions.  *See*, Roseman Decl. Exs. A, B.[2]  To their knowledge, Jacksonville Police and Fire and Austin Police have the largest financial interest in the relief sought in the Actions by virtue of their substantial investments in Omnicare during the Class Period and the losses they suffered as a result of Defendants' misconduct.  They further satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure as adequate lead plaintiffs with claims typical of the other Class members.  Accordingly, Jacksonville Police and Fire and Austin Police respectfully submit that they should be appointed as Co-Lead Plaintiffs.

The Institutional Investor Group is represented by Spector Roseman Kodroff & Willis, P.C. ("Spector Roseman"), which seeks appointment as Lead Counsel for the Class.  Spector Roseman is an eminently qualified law firm to prosecute securities fraud claims such as the ones asserted in the Actions.  In addition, the Individual Investor Group has selected Goldenberg Schneider, LPA ("Goldenberg Schneider") to serve as Local Counsel to the Class.  Goldenberg Schneider is a highly regarded firm that devotes its practice to complex class actions including securities fraud class actions.

---

[1] The losses suffered by the Institutional Investor Group, as detailed herein, may not be the same as legally compensable damages, measurement of which is often a complex legal question, which cannot be determined at this stage of the litigation.  However, the approximate recoverable damages can be determined from the executed certifications required under Section 21D of the Exchange Act and based upon reference to the market declines in Omnicare common stock.

[2] References to "Roseman Decl. Ex. __" are to the exhibits attached to the accompanying Declaration of Robert M. Roseman.

**FACTUAL BACKGROUND**

Omnicare, headquartered in Covington, Kentucky, is a leading provider of pharmaceutical care for the elderly, serving residents in long-term care facilities, chronic care and other settings comprising approximately 1.4 million beds. It derives most of its revenues directly or indirectly from government sponsored programs, primarily the federal Medicare program and, to a lesser extent, state Medicaid programs.

Omnicare has engaged in a persistent scheme to defraud Medicare, Medicaid and other federal health-care programs by submitting false claims which severely jeopardized its ability to generate revenues. As a result of this fraudulent conduct, the Company was investigated by the federal government and a number of state governments which resulted in the Company paying millions to settle the inquiries. For example, prior to the start of the Class Period, in October 2006, Omnicare agreed to pay $52.5 million to settle claims that it defrauded Michigan's Medicaid health program. Just one month later, in November 2006, Omnicare agreed to pay $49.5 million to settle claims by the U.S. government and 42 states alleging that it overcharged for drugs it provided to seniors.

Shortly after the Company reached these settlements, beginning on January 10, 2007, and continuing throughout the Class Period, Omnicare represented that it cleaned up its act and was moving beyond its Medicare and Medicaid legal compliance issues. In fact, on that day, Omnicare's Chief Executive Officer, Joel Gemunder, presenting at a JP Morgan Healthcare Conference, declared *"I'm pleased to report that we are getting these matters behind us."* This was not the only time during the Class Period that defendant Gemunder or Omnicare asserted that it has rooted out this type of fraudulent conduct within the Company. In each of its Forms 10-K filed with the SEC during the Class Period, the Company represented that "[w]e believe

3

that we are in compliance in all material respects with federal, state and local laws[.]" While the Company was trying to publicly distance itself from the pervasive fraudulent conduct that afflicted it, Omnicare continued to engage in similar machinations during the Class Period that had repercussions on the Company's financial results – misleading investors about the Company's income. Specifically, Omnicare's net sales and accounts receivable reported in its annual and quarterly reports filed with the SEC were artificially inflated throughout the Class Period as these metrics included the ill-gotten proceeds from the Company's continuing fraudulent Medicare and Medicaid submissions.

Although Omnicare tried to mask the truth, these attempts were futile as some of the negative information about the Company's precarious Medicare and Medicaid legal compliance concerns, which did not cease following the settlement of the governmental probes, leaked out on at least three occasions during the Class Period.

First, in its Form 10-Q filed on October 31, 2007, for the quarter ending September 30, 2007, Omnicare disclosed that on August 9, 2007, it received administrative subpoenas from the U.S. Attorney's Office for the District of Massachusetts seeking information arising out of the Company's relationships with certain manufacturers and distributors of pharmaceutical products and certain customers, as well as with respect to contracts with certain companies acquired by the Company. On this news, Omnicare's shares plummeted nearly 17% on this day to close at $29.50. While this disclosure did not reveal the full extent of the fraudulent conduct occurring at Omnicare, it was still directly related to the Company flouting the Medicare and Medicaid laws and regulations – leading to the issuance of the subpoenas and, ultimately, a settlement with the Massachusetts U.S. Attorney's Office (discussed below).

4

Second, on February 28, 2008, the Company issued a press release announcing its fourth quarter and 2007 full year results, in which it revealed significant charges for litigation-related professional fees in connection with, among other things, previously disclosed government inquiries. Despite assurances by Defendants that Omnicare was incompliance with "all applicable laws and regulations," on this news, the Company's shares dropped approximately 10% on the following day to close at $20.98. This announcement, while disclosing the costs of the ongoing investigation by the U.S. Attorney's Office and the other whistleblower cases related to the Company's fraudulent conduct, failed to completely reveal that the Company was still engaged in fraudulent Medicare and Medicaid submissions.

Lastly, in its Form 10-Q filed on April 30, 2009, for the quarter ended March 31, 2009, the Company disclosed that on March 23, 2009, it reached an agreement in principle with the U.S. Attorney's Office in Massachusetts which required it to pay a hefty $75 million to settle claims raised in two sealed whistleblower complaints as well as the portion of another complaint that related to the Company's provision of consultant pharmacist services and other claims covering similar conduct. Following the release of this information, the price of Omnicare's shares dropped over 5% that day to close at $25.71. Like the Company's October 31, 2007 disclosure, this disclosure, while still not divulging the full extent of fraud at Omnicare, revealed that the Company was still submitting fraudulent drug reimbursement claims to Medicare and Medicaid in violation of federal statutes.

Despite the leakage of this negative information from the Company, Defendants continued to actively conceal the full extent of the fraud – affirmatively stating, among other things, that the Company's "billing practices materially comply with applicable state and federal requirements." Nevertheless, defendant Gemunder abruptly resigned on August 2, 2010,

5

effective July 31, 2010 – after nearly 30 years at the helm of the Company. Although the market did not adversely react to this news, the announcement forecasted that strife was imminent for the Company and that the complete truth about the Company's problems was yet to be disclosed.

Then, just three days later, on August 5, 2010, Defendants' charade came to an end when Omnicare disclosed the most damning evidence yet that it was still locked in a pattern of fraud and deceit spanning over several years. On that day, Omnicare revealed that Vice President of Internal Audit John Stone filed a whistleblower action on July 17, 2009, alleging pervasive Medicare and Medicaid fraud committed by the Company over a period of more than five years.[3] In his whistleblower action, Stone stated that, during 2007, he conducted an internal audit (the "Wave I audit") that ultimately revealed that Omnicare's pharmacy facilities inappropriately submitted false and un-reimbursable claims to Durable Medical Equipment Regional Carriers ("DMERC") between 2000 and 2005 and also submitted false claims to various state Medicaid programs during the same period. According to Stone, "[t]he results of Wave I reveal[ed] that Omnicare's pharmacy facilities have engaged in a pattern and practice of systematically making claims upon the Medicare and Medicaid program which were unjustified, unjustifiable, and false." In 2008, Stone conducted another audit (the "Wave II audit") that revealed continuing Medicare and Medicaid fraud. Omnicare attempted to remedy this fraud by repaying the Medicare DMERCs without conducting any further analysis and, tellingly, without addressing the actual Medicare fraud uncovered.

Stone remained undeterred and continued to probe Omnicare's fraudulent practices after he completed the Wave I and Wave II audits, finding, among other things, that Omnicare's pharmacies were in violation of the statutory and regulatory requirements for Medicare and

---

[3] The *Qui Tam* action brought by Stone was filed under seal and thus not disclosed by the Company until August 5, 2010 – two months after it was unsealed.

6

Medicaid reimbursement and that it was violating FDA regulations and committing Medicaid fraud in connection with a specific pediatric medicine. After Stone presented his results to Omnicare's Internal Audit Committee, defendant Gemunder effectively discharged him, telling Stone "to begin looking for other employment"– leading Stone to file his whistleblower action.

The administrative subpoenas from the United States Attorney's Office in Massachusetts, as well as the settlement of those and other related claims, and Stone's findings of ongoing Medicare and Medicaid fraud, flatly contradicted defendant Gemunder's January 10, 2007 proclamation that Omnicare was moving beyond its troubled history and the statements in the Company's SEC filings and press releases that its "billing practices materially comply with applicable state and federal requirements."

## ARGUMENT

### I.   THIS COURT SHOULD CONSOLIDATE RELATED ACTIONS

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter ... [is] filed," the court shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). Currently, two (2) similar securities class actions have been filed in this Court against Omnicare and certain members of its senior management.

Under Rule 42(a), Fed. R. Civ. P., consolidation is appropriate when the actions involve common questions of law or fact. Consolidation is particularly appropriate in securities class action litigations such as this where the related Actions stem from the same series of false and misleading statements and arise under the Exchange Act. *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 806 (N.D. Ohio 1999); *In re Royal Ahold N.V. Securities and ERISA Litig.,* 219 F.R.D. 343, 348 (D. Md. 2003) ("[c]onsolidation is often appropriate in a case of multiple

securities fraud actions that are based on the same public statements and reports."); *see also,* 15 U.S.C. §78u-4(a)(3)(B)(ii) (the PSLRA recommends courts to make the decision regarding the appointment of lead plaintiffs for the consolidated action "as soon as practicable after [the consolidation] decision is rendered").

The Actions present substantially similar factual and legal issues and arise out of the same alleged scheme by Defendants. Moreover, each filed action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, names Omnicare and its senior officers as defendants, and arises from the same underlying facts and circumstances. Because the Actions are based on the same facts and involve the same subject matter, discovery obtained in this lawsuit will undoubtedly be relevant to all others. Consolidation of the Actions therefore is appropriate under Rule 42(a) and the PSLRA as common questions of law and fact predominate. 42(a), Fed. R. Civ. P.; 15 U.S.C. §78u-4(a)(3)(B)(ii). Accordingly, the Actions should be consolidated.

## II.     JACKSONVILLE POLICE AND FIRE AND AUSTIN POLICE SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

### A.     The PSLRA's Lead Plaintiff Provisions

The PSLRA sets forth a procedure for selecting a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 US.C. §§78u-4(a)(l) and (a)(3)(B). Specifically, Section 2lD(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class -
>
> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and

8

> (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 US.C. §78u-4(a)(3)(A)(i).

Under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court is to consider any motion made by class members and shall appoint as Lead Plaintiff the movant that the Court determines to be most capable of adequately representing the interests of the class. Specifically, the PSLRA provides that this Court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that *the court determines to be most capable of adequately representing the interests of class members* (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. §78u-4(a)(3)(B)(i) (emphasis added).

In adjudicating this motion, the Court must be guided by a presumption that the "most adequate plaintiff" is the person or group of persons who: (a) filed a complaint *or* made a motion to serve as Lead Plaintiff; (b) has the largest financial interest in the relief sought by the class; and (c) who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See,* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). *See also, In re Cardinal Health, Inc. Sec. Litig.,* 226 F.R.D. 298, 302 (S.D. Ohio 2005); *In re Regions Morgan Keegan Closed-End Fund Litig.*, 07-02830, 2010 WL 5173851, at *3 (W.D. Tenn. Dec. 15, 2010). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). *See also Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*, 3:09-CV-00882, 2010 WL 1790763, at *2 (M.D. Tenn. Apr. 30, 2010); *In re Am. Serv. Group*, 3:06-00323, 2006 WL 2503648, at *2 (M.D. Tenn. Aug. 29, 2006); *In re Cardinal Health,* 226 F.R.D. at 302.

As set forth below, the Institutional Investor Group satisfies all three of these criteria and thus Jacksonville Police and Fire and Austin Police are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### 1. The Institutional Investor Group Satisfies the PSLRA's Procedural Requirements

Jacksonville Police and Fire filed an action in this Court against Defendants on October 21, 2011.  In addition, Jacksonville Police and Fire and Austin Police filed this Motion to serve as Co-Lead Plaintiffs of the Class in a timely manner.  Pursuant to 15 U.S.C. §78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Action caused notice regarding the pending nature of this case to be published on *Globe Newswire*, a national, business-oriented news service, on August 24, 2011.  *See* Roseman Decl. Ex. C.  Thus, under Sections 21D(a)(3)(A) and (B) of the Exchange Act, any person who is a member of the proposed Class may apply to be appointed as lead plaintiff by the Court within sixty (60) days after publication of the notice, *i.e.,* on or before October 24, 2011.  Thus, the Institutional Investor Group has filed its Motion within the required time frame.

Moreover, pursuant to Section 12D(a)(2) of the Exchange Act, each member of the Institutional Investor Group has signed and submitted its certification detailing its suitability to serve as a class representative in this case.  *See,* Roseman Decl., Exhibits A, B.

### 2. The Institutional Investor Group Possesses the Largest Known Financial Interest in the Outcome of the Litigation

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person (or persons) or entity (or entities) with the largest financial interest in the relief sought by the class, so long as the movant meets the

10

requirements of Rule 23, Fed. R. Civ. P.  *See*, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); *In re Cardinal Health,* 226 F.R.D. at 302.

As of the time of the filing of this Motion, the members of the Institutional Investor Group believe they have the largest financial interest of any of the movants with regard to the relief sought by the Class.  In total, the Institutional Investor Group suffered losses of $343,000.  Because the members of the Institutional Investor Group possess the largest financial interest in the outcome of this litigation, they may be presumed to be the "most adequate" plaintiffs.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); *see also In re Delphi Corp. Sec., Derivative & "Erisa" Litig.*, 458 F. Supp. 2d 455, 461 (E.D. Mich. 2006).

### 3. The Institutional Investor Group Satisfies Rule 23's Typicality And Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also requires that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-(4)(a)(3)(B).  With respect to the claims of the class representative, Rule 23(a) requires that: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the class; (c) such claims are typical of those of the class; and (d) the representative will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *Ohio Pub. Employees Ret. Sys. v. Fannie Mae*, 357 F. Supp. 2d 1027, 1034 (S.D. Ohio 2005).

However, a wide-ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and plaintiffs are only required to make "a prima facie showing that they meet the typicality and adequacy prerequisites of Rule 23." *Fannie Mae*, 357 F. Supp. 2d at 1034 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 263-64 (3d Cir. 2001)).  In this regard, typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiffs

11

under the PSLRA. *See, e.g., Fannie Mae*, 357 F. Supp. 2d at 1034; *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 5:03 CV 2166, 2004 WL 3314943, at *6 (N.D. Ohio May 12, 2004). *Accord Huang v. Acterna Corp.,* 220 F.R.D. 255, 259 (D. Md. 2004).

The typicality requirement of Rule 23(a)(3), Fed. R. Civ. P., is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). *See also, Goodyear*, 2004 WL 3314943, at *6 ("Typicality is governed by Rule 23(a)(3), which requires that the claims or defenses of the representative party be typical to the claims or defenses of the class); *Royal Ahold*, 219 F.R.D. at 350 ("typicality is satisfied if the movant's claim arises from the same course of events … and relies on similar legal theories"). In other words, "a sufficient relationship must exist between the injury to the named representative and the conduct affecting the class." *Goodyear*, 2004 WL 3314943, at *6 (citing *In re American Medical Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996); *see also, In re Regions Morgan Keegan*, 2010 WL 5173851, at *5. As one court noted, "[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. Complete identification between the claims constituting each individual action is not required." *Chisholm v. Transouth Fin. Corp.,* 184 F.R.D. 556, 563 (E.D. Va. 1999). *Accord, Goodyear*, 2004 WL 3314943, at *6 ("Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."); *In re Cardinal Health,* 226 F.R.D. at 302 (typicality is satisfied "if the prospective lead plaintiff's claims arise out of the same course of conduct or series of events and are based on the same legal theory as the other members of the class.")

12

The typicality requirement is plainly satisfied in this case, where the members of the Institutional Investor Group seek the same relief and advance the same legal theories as other Class members – namely, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Omnicare, or omitted to state material facts necessary to make the statements they did make not misleading. As a result, the members of the Institutional Investor Group, as did all Class members, purchased Omnicare common stock during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has set forth two criteria for determining adequacy: (1) class representative must have common interests with those unnamed class members and, (2) it must appear that the class member will vigorously prosecute the action with the assistance of qualified counsel. *Goodyear*, 2004 WL 3314943, at *7 (citing *In re American Medical Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996); *see also Fannie Mae*, 357 F. Supp. 2d at 1034; *In re Cardinal Health,* 226 F.R.D. at 305.

The members of the Institutional Investor Group are adequate representatives for the Class. As discussed above, the Institutional Investor Group shares common interests in the Class and there is no antagonism between its interests and those of the Class. To the contrary, the interests of the Institutional Investor Group and absent Class members are squarely aligned.

13

Moreover, the Institutional Investor Group has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and have timely submitted their choice to the Court for approval pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v). Furthermore, the members of the Institutional Investor Group suffered a substantial loss related to diminution of value in the price of Omnicare common stock. As such, these members have a sufficient interest in the outcome of the case to ensure vigorous prosecution of the Action. Therefore, the Institutional Investor Group satisfies the adequacy requirement.

### III.   PROPOSED CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. §78u-4(a)(3)(B)(v). The court must consider whether the proposed counsel is qualified, experienced, and generally able to conduct the litigation. *Goodyear*, 2004 WL 3314943, at *7 (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). However, "[o]nly in very unusual circumstances will [the] lead plaintiff have to accept counsel that it did not itself choose." *In re Regions Morgan Keegan*, 2010 WL 5173851, at *14.

The members of the Individual Investor Group have selected Spector Roseman to serve as Lead Counsel. As detailed in its firm resume, Spector Roseman has extensive expertise and experience in the field of securities litigation. *See* Roseman Decl. Ex. D. In this regard, Spector Roseman has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. In addition, the members of the Individual Investor Group have selected Goldenberg Schneider to serve as Local Counsel to the Class. As detailed in its firm resume, Goldenberg Schneider is a highly regarded firm that devotes its practice to complex class actions including securities fraud. *See* Roseman Decl. Ex. E.

Thus, the Court may be confident that in Spector Roseman and Goldenberg Schneider, the Class will receive the highest caliber of legal representation in full compliance with the mandates of the PSLRA.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## CONCLUSION

For the foregoing reasons, the Institutional Investor Group respectfully requests that the Court: (1) consolidate the Actions and any related actions that may be filed; (2) appoint Jacksonville Police and Fire and Austin Police as Co-Lead Plaintiffs for the Class; (3) approve their selection of Spector Roseman as Lead Counsel and Goldenberg Schneider as Local Counsel; and, (4) grant such other relief as the Court may deem just and proper.

Dated: October 24, 2011                        **GOLDENBERG SCHNEIDER, LPA**

/s/Jeffrey S. Goldenberg
Jeffrey Goldenberg (Pro Hac Vice to be filed)
Theodore J. Schneider (KY Bar #: 85014)
35 East Seventh Street, Suite 600
Cincinnati, OH 45202
Tel:    (513) 345-8297
Fax:    (513) 345-8294

**SPECTOR ROSEMAN KODROFF
  & WILLIS, P.C.**
Mark S. Willis
1101 Pennsylvania Avenue, N.W., Suite 600
Washington, D.C. 20004
Tel:    (202) 756-3600
Fax:    (202) 756-3602

Robert M. Roseman
Andrew D. Abramowitz
Daniel J Mirarchi
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel:    (215) 496-0300
Fax:    (215) 496-6611

*Attorneys for Jacksonville Police and Fire Pension Fund and City of Austin Police Retirement System*