## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

IN RE  OMNICARE, INC.            :   **Case No. 11-cv-173-DLB-CJS**
**SECURITIES LITIGATION**       :
                                      :
                                      :   **District Judge David L. Bunning**
                                      :   **Magistrate Judge Candace J. Smith**
                                      :
                                      :
                                      :   **MEMORANDUM OPINION AND ORDER**

\* \* \* \* \* \* \* \* \* \* \* \*

## I.    INTRODUCTION

Plaintiff brings this putative securities fraud class action against Omnicare, Inc. and certain of its officers.  Plaintiff's allegations are that Omnicare, through executive-level employees, made materially false statements when it represented that its billing practices "materially comply with state and federal requirements" despite knowing that three internal audits revealed Omnicare might have submitted deficient claims for reimbursement to government programs.[1]  By Motion to Dismiss, Defendants' challenge the legal viability of Plaintiff's pleading.

The central question is whether executive-level employees' statements regarding Omnicare's legal compliance contained a misrepresentation or omission of material fact that Omnicare had a duty to disclose, thereby rendering the statements actionable under

---

[1]  Plaintiff challenges other representations made by Defendants which are discussed herein.  However, at oral argument, Plaintiff's counsel agreed that Defendants' compliance-related statements are the focus of this action.  (*See* Doc. # 135, at 77-78).

1

the Securities Exchange Act.  The Sixth Circuit has explicitly held that statements about "legal compliance" are "soft information" that are not actionable unless the defendants knew the statements were untruthful.  *Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 945-46 (6th Cir. 2009).

The central question, then, turns on three issues.  One, whether the Plaintiff adequately pled that any of the Defendants had actual knowledge of the audit results.  Two, if so, whether knowledge of the audit results gave Defendants knowledge that their statements of legal compliance were false.  And three, whether Defendants therefore had a duty to disclose the audit results in light of their statements regarding their belief that Omnicare's billing practices "materially comply" with state and federal requirements.  For the reasons considered herein, the Court finds that Plaintiff has failed to plead sufficient facts to establish that any of the Individual Defendants had actual knowledge of the audit results, or that any of the Defendants knew that the legal compliance statements were false when made.  Further, Plaintiff has not sufficiently pled that Omnicare had a duty to disclose the audit results.   Thus, the legal compliance statements are not actionable, and Defendants' Motion to Dismiss must therefore be **GRANTED**.

## II.    FACTS

### A.    The Parties

Defendant Omnicare, Inc. is a publicly-traded company that provides pharmaceutical care services to the elderly and serves residents in long-term healthcare facilities in the United States and Canada.  (Doc. # 94, ¶¶ 10, 21).  Defendant Gemunder served as Omnicare's President, CEO and director from May 20, 1981, until his resignation on August

2

2, 2010; Defendant Froesel was Omnicare's CFO and a Senior Vice-President from March 1996 until November 2009; Defendant Hodges was Omnicare's Secretary and a Senior Vice-President from 1994 until she resigned on August 2, 2010; and Defendant Workman began working at Omnicare in November 2009 and is the current President and CFO. (Doc. # 94, ¶¶ 11-14).

This proposed class action was filed by Paul Ansfield on August 24, 2011, alleging claims for violations of § 10(b) and § 20(a) of the Securities Exchange Act of 1934, and 10b-5, a regulation promulgated under § 10(b), on behalf of a proposed class of persons that purchased Omnicare's common stock between January 10, 2007, and August 5, 2010, and who were damaged thereby. (Doc. # 1). Jacksonville Police and Fire Pension Fund (Jacksonville) filed an action asserting the same claims and further asserting partial corrective disclosures. (Case No. 11-cv-315). On December 15, 2011, this Court granted Jacksonville and Movant Austin Police Retirement System's Motion to Consolidate this action with Ansfield's case. (Doc. # 56). Three groups presented Motions for Appointment as Lead Plaintiff, and, after hearing oral argument, KBC Asset Management N.V. was appointed as Lead Plaintiff ("Plaintiff") and its choice of lead class counsel was approved pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § § 78u-4, et seq. (Doc. # 86).

### B.    The Stone *Qui Tam* Action

Plaintiff's allegations are based in large part on the allegations contained in a *qui tam* action filed in the Northern District of Illinois by John Stone, Omnicare's former Vice President of Internal Audit. In that action, Stone asserted claims under the False Claims Act (FCA). He alleged that Omnicare submitted false claims to the United States

3

Government as well as several States, which claims constituted fraud on the Medicare and Medicaid programs.

Stone's claims were based on the results of three internal audits that he performed–two on ancillary-related services and one on newly-acquired pharmacies–which he alleged demonstrated wide-spread problems in Omnicare's submission of Medicare and Medicaid claims.  Specifically, Stone alleged that in 2007 Omnicare commissioned him to perform an audit of 18 of its pharmacy facilities that provided ancillary services (Wave I audit).  He alleges he reviewed 39 claims from each of the 18 pharmacies audited, for each year between 2000 and 2005 (pre-class period).  The results of the audit allegedly revealed that all 18 pharmacies had submitted numerous claims during the time period to both Medicare and state Medicaid programs without having the required supply documentation retained on file by Omnicare, which according to Stone renders them false and non-reimbursable.  Stone averred that the error rates were so high that Omnicare knew or should have known that these "false" claims were being made.

At the direction of management, in 2008 Stone performed a second internal audit (Wave II audit), to determine if Wave I's finding of missing documents was a result of documents being lost.  Stone reviewed 30 claims submitted in 2008 from 15 of Omnicare's pharmacies.  The result of the Wave II audit allegedly provided evidence that claims continued to be submitted without the required supporting documentation being on file.  The Wave II audit also allegedly revealed that at least two pharmacies billed Medicaid patients at a higher rate than some non-Medicaid patients.

Stone further alleged that in conducting interviews in conjunction with the Wave II audit, he learned that certain Omnicare pharmacy facilities engaged in Medicaid fraud with

respect to Synagis, a pediatric medicine.  The FDA-approved label for Synagis instructed that unused portions of the drug be discarded, but Stone allegedly discovered some Omnicare pharmacies were stockpiling the undiscarded excess to fill new prescriptions, and billing Medicaid for the new prescriptions, when in reality they were being filled with the stockpiled excess.  Two pharmacy managers from an Omnicare Nevada Pharmacy allegedly confirmed their pharmacy intentionally stockpiled excess Synagis and billed all payors for prescriptions filled with the stockpiled excess, including Nevada Medicaid.

In his federal court action, Stone alleged that Omnicare attempted to conceal the ongoing fraud by repaying Medicare for the "false" claims uncovered in the Wave I audit, without further examining other claims even though the likelihood was great that there were other incidents of fraud since the audit covered such a small sampling of claims.  Stone asserted that at the time of the reimbursement, Omnicare was aware that the results of the Wave II audit showed continuing fraud, but it did not attempt to reimburse for the fraud uncovered in the Wave II audit.

Stone also asserted that in 2008 he was directed to perform an audit of newly-acquired pharmacies to determine whether they were in compliance with Medicare and Medicaid regulations (the pharmacy audit).  Stone asserted that the pharmacy audit revealed the pharmacies were in violation of numerous statutory and regulatory requirements involving order processing and control test failures.

On June 11, 2010, the Illinois District Court ordered that Stone's *qui tam* action be unsealed upon its granting of the United States' and Named States' notice of election to decline intervention in the matter.  Stone chose to continue to pursue his claims.  The Illinois District Court has dismissed Stone's FCA claims on three occasions, twice without

prejudice.  In the most recent dismissal <u>with</u> prejudice, the Illinois District Court noted that Stone's assertions that unidentified pharmacy staff members confirmed that claims were regularly submitted without required documentation and that pharmacy managers did not care what documents were being submitted to the government health programs "as likely evinces negligence as it does actual knowledge, deliberate ignorance or recklessness." *United States ex rel. John Stone*, 1:09-cv-04319 (N.D. Ill. Nov. 20, 2012).  That court dismissed all claims except Stone's claim for retaliatory discharge, finding Stone had not alleged the required mental state for a claim under the False Claims Act.

Thus, there has been no actual finding that Omnicare's submission of some claims for payment without having on file the required supporting documentation or that its billing for stockpiled Synagis constituted fraud against Medicare or Medicaid.  Nor has Plaintiff made any allegations here that any regulatory action has been initiated against Omnicare for this conduct.

### C.    The Consolidated Amended Complaint

On May 11, 2012, Plaintiff filed a Consolidated Amended Complaint ("Complaint") alleging Defendants made false and misleading statements arising under Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder.  (Doc. # 94). Specifically, Plaintiff alleges that Defendants made the following false and misleading statements or omissions:

1)    Omnicare falsely represented in its SEC filings that it was in material compliance with all state and federal regulations as well as its own codes of conduct;

2)    Omnicare's statements describing the risks that would befall the company if it were found to have violated certain regulations were also misleading because it knew at the time it made the statements that it was not in compliance with regulations;

3)      Omnicare falsely represented that its issues with Medicare and Medicaid compliance had been resolved, which scheme began on January 10, 2007, with Gemunder's statement at the JP Morgan Healthcare Conference that proclaimed the Company's "goal is to comply with all laws and regulations," and it was getting its regulatory issues behind it;

4)      Omnicare issued false financial results during the class period on its 10-K and 10-Q filings with the SEC and falsely reported artificially inflated financial data in its quarterly earnings conference calls and at investor conferences by including proceeds of the company's fraudulent Medicare and Medicaid submissions in its calculations;

5)      Omnicare made material misrepresentations and/or omissions by attributing its success to legitimate business factors while omitting the effect of its fraudulent submissions to Medicare and Medicaid; and

6)      Defendants Gemunder, Froesel and Workman knowingly signed false Sarbanes-Oxley ("SOX") certifications during the class period certifying that the SEC filings contained accurate statements of material fact and fairly presented in all material respects the financial condition of the company.

Plaintiff alleges that as a result of the misrepresentations, Omnicare was able to conceal from investors its alleged fraudulent scheme, which, according to Plaintiff, artificially inflated Omnicare's stock price by misrepresenting the company's financial results and business practices, until the scheme was revealed to the market when the *Stone qui tam* action was disclosed in Omnicare's Form 10-Q filed on August 5, 2010. Defendants filed a Motion to Dismiss the Consolidated Amended Complaint (Doc. # 106), which has been fully briefed.  In addition, Jacksonville has filed a Motion for Creation of a Subclass (Doc. # 108), which is also ripe.

On February 14, 2013, this matter came before the Court for an Oral Argument on Defendants' Motion to Dismiss and Jacksonville's Motion for Creation of a Subclass. Plaintiff having raised a new argument during Oral Argument regarding non-party employees' knowledge of the audit results being imputed to Defendant Omnicare, the Court permitted the parties an opportunity to submit additional briefing on the issue, which briefing

7

has now been filed.  (Doc. # 136, 137).  The Court having heard from the parties by way of oral argument and briefing, the matters are now ripe for a decision.

## III.   ANALYSIS

### A.   Plaintiff's Claim under 10(b) and 10b-5 is Dismissed

Section 10(b) and Rule 10b-5 prohibit "fraudulent, material misstatements or omissions in connection with the sale or purchase of a security." *Louisiana Sch. Emp. Ret. Sys. v. Ernst & Young, LLP,* 622 F.3d 471, 478 (6th Cir. 2010)(quoting *Frank v. Dana Corp.*, 547 F.3d 564, 569 (6th Cir. 2008)).  The elements of this cause of action are: "1) a material misrepresentation or omission by the defendant; 2) scienter; 3) a connection between the misrepresentation or omission and the purchase or sale of a security; 4) reliance upon the misrepresentation or omission; 5) economic loss; and 6) loss causation."  *Hod Carriers*, 583 F.3d at 942; *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (citations omitted).

Section 10(b) claims sound in fraud, and therefore the strict pleading requirements of Federal Rule of Civil Procedure 9(b) apply.  *Hod Carriers*, 583 F.3d at 942.  In addition, the PSLRA created an even heightened pleading standard for securities fraud cases.  *Id.*; *see also Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, __ U.S. __, 2013 WL 691001, at *12 (Feb. 27, 2013).  Specifically, Rule 9(b) requires "[a] plaintiff's complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Louisiana Sch. Emp. Ret. Sys.*, 622 F.3d at 478 (quoting *Dana Corp.*, 547 F.3d at 570).  In addition, "[t]he PSLRA 'requires plaintiffs to state with

8

particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007)). If a plaintiff does not meet this requirement, the PSLRA provides that a court shall, on any defendant's motion, dismiss the complaint. *See* 15 U.S.C. § 78u-4(b)(3).

Defendants argue the Complaint should be dismissed because Plaintiff failed to satisfy the reasonable investigation requirement of Rule 11 of the Federal Rules of Civil Procedure and the strict pleading requirements of the PSLRA and Rule 9(b). In addition, Defendants assert that Plaintiff has failed to adequately plead three required elements of the claim; specifically, a material misstatement or omission, scienter and/or loss causation. The failure to adequately plead any one of these elements is fatal to Plaintiff's cause of action.

For the following reasons, the Court concludes that Plaintiff's investigation complied with the requirements of Rule 11. Nevertheless, the Complaint is dismissed with prejudice because Plaintiff has failed to plead an actionable misrepresentation or omission and has therefore failed to plead a prima facie claim under Section 10(b) and Rule 10b-5. This failure being dispositive, Defendants' alternative grounds for dismissal, i.e. failure to plead scienter or loss causation, need not be considered.

### 1.    Plaintiff Performed Sufficient Investigation

Defendants first argue that Plaintiff "lifted" the underlying allegations of fraud from the *Stone* Complaint, and that this is insufficient to satisfy the reasonable investigation requirement of Rule 11 and the strict pleading requirements of the PSLRA and Civil Rule

9(b).[2]  This argument, at least with respect to Civil Rule 11, does not warrant a great deal of attention.  Suffice it to say that Plaintiff's Complaint not only recites allegations from the *Stone* Complaint, which is based on Stone's knowledge of the compliance audits he performed as Omnicare's Vice President of Audit, but counsel also reviewed Omnicare's SEC filings, transcripts of investor conference calls, analyst reports and interviewed more than twelve former Omnicare employees.  (Doc. # 94, ¶ 1).  While not exhaustive, counsel has performed an independent investigation sufficiently evaluative of the circumstances relied upon and alleged by Stone.  For purposes of the pending motion, Plaintiff's reliance on the *Stone* allegations and other sources satisfies the reasonable investigation requirement of Rule 11.

### 2.    Material Misrepresentation and Omissions

Defendants assert that Plaintiff has failed to adequately plead actionable misstatements or omissions.  The PSLRA and Federal Rule of Civil Procedure 9(b) require the alleged misrepresentations be plead with specificity: "the complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' "  *Hod Carriers,* 583 F.3d at 942-43.

To be actionable, the misrepresentation or omission must pertain to material information that Omnicare had a duty to disclose.  *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 468 (6th Cir. 2011) (quoting *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005)).  "A misrepresentation or omission

---

[2]  Whether the strict pleading requirements of the PSLRA and Rule 9(b) have been met is discussed *supra*.

is material only if there is a substantial likelihood that "a reasonable investor would have viewed the misrepresentation or omission as "having significantly altered the total mix of information made available."'"  *In re Ford Motor Co. Sec. Litig.*, *Class Action*, 381 F.3d 563, 570 (6th Cir. 2004) (quoting *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 400 (6th Cir.1997)); *see also Matrixx Initiatives, Inc. v. Siracusano*, __ U.S. __, 131 S. Ct. 1309, 1318 (2011) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)).  In addition, "[w]hen a company chooses to speak, it must 'provide complete and non-misleading information.'" *Oppenheimer*, 648 F.3d at 468 (quoting *Sofamor*, 123 F.3d at 400).

Here, Plaintiff asserts six types of false statements that it contends are actionable.

### a. Statements of Legal Compliance and Statements of the Risks if Found to be in Noncompliance

Plaintiff alleges that in Omnicare's SEC filings, Defendants made various misrepresentations concerning the Company's compliance with applicable law, yet the internal audits revealed Omnicare was not complying with Medicare and Medicaid reimbursement regulations.  Specifically, Plaintiff claims Omnicare's Form 10-K filed with the SEC on March 1, 2007, February 28, 2008, February 26, 2009, and February 25, 2010, contained materially false and misleading information. (Doc. # 94, ¶¶ 91-95).[3]  Each of these SEC filings provided:

> Medicare and Medicaid providers and suppliers are subject to inquiries or audits to evaluate their compliance with requirements and standards set forth under these government-sponsored programs. These audits and inquiries,

---

[3] In addition, Plaintiff asserts Omnicare's annual proxy statements filed with the SEC during the class period, SEC Form DEF14A, referenced the Company was complying with its codes of conduct, giving the impression that Omnicare had sufficient controls to ensure compliance.  Yet, Omnicare was allegedly submitting claims in violations of Medicare and Medicaid reimbursement regulations.  (Doc. # 94, at ¶¶ 96-100).

11

as well as our own internal compliance program, from time-to-time have identified overpayments and other billing errors resulting in repayment or self-reporting to the applicable agency.  **We believe that our billing practices materially comply with applicable state and federal requirements**.  However, the requirements may be interpreted in the future in a manner inconsistent with our interpretation and application.
* * *
**Although we believe that we are in compliance in all material respects with federal, state and local laws**, failure to comply could subject us to denial of the right to conduct business, fines, criminal penalties and other enforcement actions.

(Doc. # 94, ¶¶ 91-94) (emphasis original to Complaint).  Plaintiff contends that the compliance statements were material misrepresentations because the internal audits revealed that Omnicare was submitting reimbursement claims without the necessary supporting documentation on file, pharmacies had billed for stockpiled Synagis, and two facilities had billed Medicaid patients at a higher rate than non-Medicaid patients.

In their Motion to Dismiss, Defendants argue that these statements are not actionable for three reasons.  First, Defendants assert that the material compliance statements were not false because Omnicare has not been found to have committed Medicare and/or Medicaid fraud as alleged in the *Stone* action.  Second, Defendants rely on *Hod Carriers* for the proposition that the legal compliance statements are not actionable because the Defendants did not have actual knowledge of the falsity of the statements at the time they were made.  Finally, Defendants rely on *Hod Carriers* again in arguing that even if they had knowledge of the internal audit results, they had no duty to disclose them because a company never has a duty to accuse itself of criminal wrongdoing.

Plaintiff responds that the material compliance statements are actionable.  According to Plaintiff, these statements were false because internal audits had revealed that

Omnicare submitted improper claims to Medicare and Medicaid for reimbursement. Plaintiff contends these statements are actionable because it has sufficiently pled Defendants knew from Stone's audit results and other sources that the compliance statements were false when made. Additionally, Plaintiff states that while Omnicare did not have a duty to accuse itself of wrongdoing, once it made these compliance statements, it had a duty to speak truthfully on the subject and reveal its unlawful claims submissions.

The Sixth Circuit has squarely addressed the parties' competing arguments in *Hod Carriers*. In that case, plaintiffs sought recovery against Omnicare for, *inter alia*, assuring the public on a number of occasions that it was complying with the law. *Hod Carriers*, 583 F.3d at 941. For example, an Omnicare press release stated that ". . . [t]o the best of our knowledge, our purchase of pharmaceuticals comply with applicable laws and regulations and are consistent with Omnicare's goal of providing appropriate pharmaceutical care cost-effectively for the seniors we serve." *Id*. The plaintiffs contended that the legal compliance statements were materially misleading because Omnicare was engaged in two fraudulent schemes at the time the statements were made: (1) repackaging and reshipping drugs with varying expiration dates, including some expired drugs; and (2) replacing cheaper doses of certain medicines with more expensive doses in order to increase revenue. *Id*. The plaintiffs argued that Omnicare was liable for its allegedly false legal compliance statements because it knew they were false when made, and also because once it spoke on the subject by issuing the legal compliance statements it was obligated to disclose its illegal conduct to correct the statements. *Id*.

The Sixth Circuit rejected each of plaintiffs arguments. *Id*. at 945-47. The Circuit Court first discussed the legal compliance statement. Relying on the Eighth Circuit's

decision in *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820 (8th Cir. 2008), the Sixth Circuit opined that statements of legal compliance, if untrue, are actionable only "where the complaint 'adequately pleaded that the defendants knew the statements were untruthful.'" *Id.* at 945-46 (quoting *Kushner*, 317 F.3d at 831).   The Circuit Court concluded that the complaint failed to sufficiently allege the defendants were aware of any wrongdoing, and the legal compliance statements were, therefore, not actionable.  *Id.* at 946.

The *Hod Carriers* Court then turned to the separate issue of whether Omnicare had "a duty to disclose its 'illegal' operations based on its 'legal compliance' claim."  *Id.*  The Circuit Court held that Omnicare did not have a duty to disclose the illegal operations because the materiality of the alleged omissions - the alleged illegal operations - derived from predictions of whether third parties would seek fines or other sanctions based on a finding of regulatory violations.  *Id.* at 947.  Thus, the Sixth Circuit concluded that where the materiality of the alleged omission is derived from the consequences of the actions (i.e., a finding of illegality and subsequent sanctions), rather than the actions themselves, the consequences are "soft" information not required to be disclosed.  *Id.* (citing *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 575 (6th Cir. 2008)).

*Hod Carriers* dictates that this Court find the compliance statements at issue here are not actionable and that Defendants did not have a duty to disclose the alleged Medicare and Medicaid fraud after making compliance statements.   This holding rests on two conclusions: (1) as in *Hod Carriers*, the misrepresentations at issue are not actionable because the Complaint does not allege sufficient facts to establish that the Defendants had actual knowledge the compliance statements were false when made; and also as in *Hod Carriers*, (2) the materiality of the alleged omissions–namely audit results suggesting that

14

Omnicare could be found to have committed Medicare and/or Medicaid fraud–requires a prediction of third parties' conduct, and thus constitutes "soft"[4] information not required to be disclosed.  Each of these conclusions will be addressed in turn.

### (1)   No Actual Knowledge of Misrepresentation

As *Hod Carriers* makes clear, statements of legal compliance are actionable only "where the complaint 'adequately pleaded that the defendants knew the statements were untruthful."  *Hod Carriers,* 583 F.3d at 945 (quoting *Kushner*, 317 F.3d at 831); *City of Pontiac*, 865 F. Supp. 2d at 822 (quoting *Sofamor*, 123 F.3d at 401).  Judge Heyburn's recent decision in *In re Almost Family, Inc. Securities Litigation*, more fully develops this rule.  Quoting the Eighth Circuit's decision in *Kushner*, Judge Heyburn explained that statements of legal compliance are not actionable "[a]bsent a clear allegation that the defendants **knew** of the scheme **and its illegal nature** at the time they stated the belief that the company was in compliance with the law . . . ."  *In re Almost Family, Inc. Sec. Litig.*, No. 3:10-cv-00520-H,  2012 WL 443461 (W.D. Ky. Feb. 10, 2012) (quoting *Kushner*, 317 F.3d at 831) (emphasis added).  More specifically, the "plaintiff must plead **actual knowledge** on behalf of defendants, since '[t]he fact that a defendant's belief or opinion later "prove[s] to be wrong in hindsight does not render the statements untrue when made."'"  *Id.* at *7 (emphasis added; internal citation omitted).

---

[4]  When determining if statements are actionable, the Sixth Circuit has applied a "hard" and "soft" information distinction.  *Hod Carriers*, 583 F.3d at 942.  "Hard information is typically historical information or other factual information that is objectively verifiable.*"  City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 822 (W.D. Mich. 2012) (quoting *Sofamor*, 123 F.3d at 401).  "Soft" information, on the other hand, "includes predictions and matters of opinion."  *Id.* "Soft" information need only be disclosed if it is "virtually as certain as hard fact."  *Id.*

Plaintiff relies on three types of allegations within the Complaint to demonstrate that Defendants had actual knowledge that Omnicare knew its legal compliance statements were false when made: (1) state and federal investigations into Omnicare's operations, including settlement agreements between Omnicare and the government; (2) confidential witness statements that allegedly reveal pervasive fraud; and (3) the allegations made by Stone in his *qui tam* action.  As discussed below, none of these allegations are sufficient to find Defendants had actual knowledge that the legal compliance statements were false when made.

### (a)      Individual Defendant's knowledge

Reviewing Plaintiff's allegations as to the Individual Defendants, the Court finds there are insufficient allegations to establish any of them actually knew that Omnicare was submitting "false" claims for reimbursement as alleged in the *Stone* action, nor do they establish any of the Defendants knew that Omnicare's actions were actually illegal or fraudulent.   First, Plaintiff's reliance on government investigations and settlement agreements does not establish that the Defendants had actual knowledge that Omnicare was submitting "false" claims for reimbursement.  The allegations regarding government investigations do not contain specific assertions of fact as to when Omnicare or the Individual Defendants learned of the investigations, what they learned, or how they learned it.

Even more problematic, to the extent the Complaint reveals the scope of the other investigations, Plaintiff has not alleged sufficient facts to establish a connection between what Plaintiff alleges Defendants knew from those other investigation/settlements, and what was allegedly revealed to the market in this case.  *See Hod Carriers*, 583 F.3d at 946

16

(holding that complaint did not plead sufficient "actual knowledge" where there was a disconnect between what the individual actually knew and what was allegedly revealed to the market).  For example, the Complaint alleges that Omnicare was investigated by the United States Attorney's Office for the District of Massachusetts on issues pertaining to allegations it was interchanging capsules and tablets for certain drugs (Doc. # 94, at ¶ 26); that Omnicare settled claims that it overcharged for certain drugs (*Id.* at ¶32); and that Omnicare settled claims alleging it knowingly submitted claims for reimbursement that involved kickbacks either to or from Omnicare.  (*Id.* at ¶ 83).

Here, however, the alleged omission is that Omnicare did not disclose it submitted claims without required documents being on file, billed for stockpiled Synagis, and two of its pharmacies billed Medicaid at a higher rate than those pharmacies billed non-Medicaid patients.  While Plaintiff did allege Omnicare settled allegations that it submitted false reimbursement charges to Michigan's Medicare program, the only specific allegation on this point is that Omnicare submitted charges for deceased persons.  Plaintiff did not allege specific facts connecting the billing practices at issue in the Michigan settlement to the allegations it raises here.  (*Id.* at ¶30).  Thus, Plaintiff has not alleged sufficient facts establishing that the prior government investigations or settlements have a similar connection to the alleged conduct at issue in this litigation.

Likewise, the allegations of the five confidential witnesses referenced in Plaintiff's Complaint fail to establish that the Individual Defendant's had actual knowledge. Confidential Witnesses one through four provide information regarding purported irregularities witnessed during their employment.  However, none of these confidential witnesses indicate they actually provided this information to any of the Individual

17

Defendants, which is what is required to establish actual knowledge. *See Hod Carriers*, 583 F.3d at 946-47 (disregarding allegations of three confidential witnesses who reported illegal activity within the company because they did not establish any knowledge on the part of defendants). Moreover, these confidential witnesses' allegations are vague and implicate only a few of Omnicare's facilities.

The closest factual allegation in Plaintiff's Complaint supporting a finding that any of the confidential witnesses communicated with any of the Individual Defendants is as follows:

> 82. CW5 was Omnicare's Chief Compliance Officer from before the Class Period through 2008 when he/she was replaced by James Mathis. CW5 confirmed the reports of the other confidential witnesses detailed above, and qui tam relator Stone, stating that he/she had brought compliance related concerns to the attention of defendant Gemunder and other Omnicare executives. Specifically, he/she advised counsel that "as you were told by other people, I did my best to bring it to the head [i.e. Gemunder], but it didn't work." CW5 also stated that he/she "did what [he/she] was supposed to do as a Chief Compliance Officer and a Corporate Officer and [he/she] threw up [his/her] arms, and said 'I'm retired and I'm going home.'"

(Doc. # 94, ¶ 82). CW5's purported statement does not provide a sufficient factual basis to establish Defendants had knowledge of any illegality. Instead, CW5 states he brought "compliance related **concerns**" to the attention of Gemunder and other unnamed Omnicare executives without any indication of what those concerns were. (*Id.*; emphasis added). Even assuming the "concerns" were the alleged Medicare and Medicaid fraud, CW5 does not provide a date on which he asserts he provided this information to Defendant Gemunder or others or the specifics of what was discussed. As a result, even CW5's allegations fail to establish that Gemunder or any of the Individual Defendants had actual knowledge of the alleged improper claims submissions.

The crux of Plaintiff's complaint and argument, however, surrounds Defendants' alleged knowledge of the results of Stone's three internal audits, which Stone claimed demonstrated a "scheme to defraud Medicare and Medicaid" by Omnicare's submission of claims that did not comply with laws and regulations of those programs.  (Doc. # 94, at ¶38).  Plaintiff did not allege any of the Individual Defendants had actual knowledge that these specific audits were even being performed.  Instead, Plaintiff alleges Stone was instructed to perform the audits by "Omnicare," "Keefe" (Omnicare's Chief Operating Officer), and the "Company."  There are no allegations that any of the Individual Defendants, directly or indirectly, ordered Stone to conduct the audits.  At best, the Internal Audit and Compliance Committees were aware of the ongoing audits, but there are no allegations that any of these Individual Defendants served on any of those committees.

More importantly, there are no specific allegations of fact establishing that any of these Individual Defendants were informed of the Wave I or Wave II audit results.  Instead, Plaintiff alleged:

> 46.    Stone presented the results of the Wave I audit to Omnicare's Internal Audit and Corporate Compliance Committees.  **On information and belief**, the information was immediately given to defendants Gemunder, Froesel, and Hodges and received by defendant Workman when he started at the Company in November 2009. . . .
> . . .
> 51.    **On information and belief**, Stone presented the results of the Wave II audit to Omnicare's Internal Audit and Corporate Compliance Committees and the results were immediately given to defendants Gemunder, Froesel, and Hodges and received by defendant Workman when he started at the Company in November 2009. . . .

(Doc. # 94, ¶¶ 46, 51) (emphasis added).  Plaintiff's allegations that the Individual Defendants had knowledge of the audit results is solely based "on information and belief," without stating with particularity the facts upon which that belief is based.  This is

19

insufficient, as the PSLRA requires that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1);  *See also Oppenheimer*, 648 F.3d at 469; *City of Pontiac*, 865 F. Supp. 2d at 820.  Here, Plaintiff has failed to set forth the basis for its belief, and while Plaintiff relies generally on the *Stone* action for much of its allegations, the complaints there do not allege Stone directly communicated these audit results to any of the Individual Defendants.

With respect to the pharmacy audit, the Complaint alleges "on information and belief" that the results were shared with Froesel and Hodges.  (Doc. # 94, ¶ 62).  Again, this is insufficient to establish actual knowledge as to those Defendants. 15 U.S.C. § 78u-4(b)(1).  While the Complaint does allege that Stone directly shared the results of the pharmacy audit with Gemunder (Doc. # 94, ¶ 193), even this allegation does not establish that he had actual knowledge of the allegedly fraudulent activity.  Specifically, Plaintiff has not alleged with particularity what the specific results of the pharmacy audit demonstrated or what was communicated to Gemunder, i.e. how many pharmacies were involved, what specific irregularities were found, how many actual claims were involved, or how, or what, information was actually communicated.  Thus, Plaintiff has not sufficiently alleged actual knowledge on the part of any of the Individual Defendants.

Finally, as discussed more fully below, even if the Individual Defendants were somehow aware these audits were being performed and had been informed of their results, the Complaint does not allege sufficient facts to support a conclusion that from this knowledge they knew their legal compliance statements were false.

### (b) Omnicare's Knowledge

During oral argument, Plaintiff argued for the first time that the knowledge of Stone (Omnicare's former Vice-President of Internal Audit), Patrick Keefe (Omnicare's Chief Operating Officer), William Fitzpatrick (Omnicare's Chief Compliance Officer), as well as that of the Internal Audit Committee can be imputed to Defendant Omnicare.  (Doc. # 135, 137).  In its supplemental briefing on the issue, Plaintiff relies on *City of Monroe Employees Retirement System v. Bridgestone Corp.,* 399 F.3d 651, 688 (6th Cir. 2005); *In re National Century Financial Enterprises, Inc*, 846 F. Supp. 2d 828, 874-75 (S.D. Ohio 2012); *Kahn v. Ran*, No. 08-cv-14417, 2009 WL 1138504 (E.D. Mich. April 27, 2009); *In re Keithley Instruments, Inc. Securities Litigation*, 268 F. Supp. 2d 887, 901-02 (N.D. Ohio 2002), as well as decisions from outside of this circuit, for the collective proposition that the knowledge of senior level employees, including non-defendants, may be imputed to a company.  All of the cited cases, however, impute knowledge for purposes of determining a company's scienter.  Whether a plaintiff has adequately pled scienter, which can include a finding of recklessness, is a distinct concept from whether the plaintiff has established that a particular statement constitutes an actionable misrepresentation or omission.

As discussed above, the Sixth Circuit has held that for statements of legal compliance to be actionable, a plaintiff must establish that defendants had **actual knowledge** of their falsity.  *Hod Carriers*, 583 F.3d at 945; *Almost Family*, 2012 WL 443461, at *7.  In arguing that the knowledge of non-defendant executives can be imputed to Omnicare, Plaintiff fails to cite primary authority where the knowledge of a non-defendant employee, who did not make the compliance statement, was imputed to the company for

21

purposes of finding that a corporation had actual knowledge rendering its legal compliance statement actionable as an alleged misrepresentation.

Nevertheless, even if the Court were inclined to impute to Omnicare the knowledge of non-defendant employees who Plaintiff has not alleged are in any way responsible for the compliance statements, the Complaint does not allege sufficient facts to support a finding that from this knowledge Omnicare knew its legal compliance statements were false.  The legal compliance statements at issue stated:

> Medicare and Medicaid providers and suppliers are subject to inquiries or audits to evaluate their compliance with requirements and standards set forth under these government-sponsored programs. These audits and inquiries, as well as our own internal compliance program, from time-to-time have identified overpayments and other billing errors resulting in repayment or self-reporting to the applicable agency.  **We believe that our billing practices materially comply with applicable state and federal requirements**.  However, the requirements may be interpreted in the future in a manner inconsistent with our interpretation and application.

(Doc. # 94, at ¶¶ 91-94).  Thus, the statements acknowledge that audits do "from time-to-time" identify billing errors, but that Omnicare believes its billing practices **"materially comply**,"–not strictly comply–with the applicable requirements.   Omnicare's mere knowledge that some claims were submitted for reimbursement without sufficient supporting documentation, billed for stockpiled Synagis, or submitted at a higher rate than non-Medicaid patients does not mean it knew the claims referenced would be found by third parties to constitute material noncompliance with Medicare and Medicaid laws.  *See Hod Carriers,* 583 F.3d at 946-47; *Zaluski,* 527 F.3d at 575; *City of Pontiac,* 865 F. Supp. 2d at 824-27.

*City of Pontiac* is instructive.  There, the plaintiffs alleged Stryker Corporation's statement in its SEC filing that it believed its manufacturing and quality control procedures met the requirements of the Food and Drug Administration's (FDA) regulations was false and misleading. Plaintiffs alleged these statements were actionable because, *inter alia*, Defendants had knowledge of potential noncompliance based on their prior receipt of an FDA Form 483 identifying "serious quality control deficiencies."  865 F. Supp. 2d at 824. "An FDA Form 483 is issued to firm management at the conclusion of an inspection when an investigator has observed any conditions that in their judgment may constitute violations of the Food Drug and Cosmetic Act . . . FDA investigators are trained to ensure that each observation noted on the FDA Form 483 is clear, specific and significant."  FDA Form 483 Frequently Asked Questions, http://www.fda.gov/ICECI/EnforcementActions/ ucm256377. htm (last visited March 14, 2013).  Form 483 merely notifies the company's management of objectionable conditions.  *Id.*  It does not constitute a final agency determination of whether any condition violates the law.  *Id.*

The court in *City of Pontiac* rejected plaintiffs' argument, finding Stryker had "no duty to disclose the . . . Form 483, nor did it render the compliance statement false or misleading" because the "Form 483 was not the final word on whether the . . . facility was in compliance with FDA regulations."  *Id.* at 825.  Therefore, the Court held that since the Form 483 did not constitute a final agency determination, "any information in the Form 483 was 'soft' information as to the existence of regulatory violations."  *Id.* at 826.[5]

---

[5]  Plaintiff cites the Eighth Circuit's decision in *Public Pension Fund Group v. KV Pharmaceutical Co.,* 679 F.3d 972 (8th Cir. 2012), for the proposition that facts within a Form 483 can give a defendant knowledge that its statement of legal compliance is false.  Plaintiff is correct that a Form 483 can give a Defendant knowledge in some circumstances according to *KV*

The *City of Pontiac* court placed significant emphasis on the fact that the Form 483 only disclosed facts that might constitute a violation of law, but did not contain an opinion of noncompliance.  The court makes this point clear in its distinction of *Wilkof v. Caraco Pharmaceutical Laboratories, Ltd.*, No. 09-12830, 2010 WL 4184465 (E.D. Mich. Oct. 21, 2010).  In *Wilkof*, the defendant corporation had received a warning letter from the FDA, in addition to multiple Form 483s, prior to making its compliance statement.  Unlike a Form 483, an FDA warning letter "communicates the agency's position" that a violation of regulatory significance has occurred.  (FDA Regulatory Procedures Manual, 4-1-1 Warning Letter Procedures, http://www.fda.gov/ICECI/ComplianceManuals/Regulatory Procedures Manual/ucm176870.htm) (last viewed March 14, 2013).  The *City of Pontiac* court found significant the receipt of the warning letter, not just the Form 483s, prior to the compliance statement in *Wilkof*.  865 F. Supp. 2d at 825.

Applying the principles of *City of Pontiac*, even if the Court accepts Plaintiff's position that knowledge of non-defendant employees should be imputed to Omnicare, this still does not further Plaintiff's argument that Omnicare had actual knowledge that its legal compliance claims were false.  The only knowledge that would be imputed to Omnicare is the knowledge that the audits allegedly revealed that there were some claims submitted to government programs for reimbursement without Omnicare having proper supporting documentation in its files, that some facilities billed for stockpiled Synagis, and  that two facilities billed Medicaid at a higher rate on some claims than non-Medicaid patients.  The

---

*Pharmaceutical*, but circumstances require the Form 483 to reveal numerous, severe and pervasive objectionable conditions.  *Id.* at 982-83.  Even if this case were binding on this Court, the audit results at issue here were of "a small selection" and "a limited sample" as Plaintiff concedes in its Complaint.  (Doc. # 94, at ¶¶ 42, 49).

Stone audit results are even "softer" than the Form 483 in *City of Pontiac* in that they merely revealed errors from limited internal audits, not findings of irregularity by an agency. Nor are the audit results like the warning letter in *Wilkof* because the audit results are not an opinion from an agency, court or other sanctioning entity about factual findings amounting to noncompliance. Accordingly, since the audit results are not the final word on whether Omnicare was in "material" compliance, like *City of Pontiac*, it is not a basis for finding Omnicare knew its compliance statements were false when made.

Moreover, and also as in *City of Pontiac*, the compliance statements at issue here are couched in terms of a belief: "[w]e believe that our billing practices materially comply with applicable state and federal requirements," and "we believe that we are in compliance in all material respects with federal, state and local laws." "[A]n expression of opinion [] is actionable only 'if the speaker does not believe the opinion and the opinion is not factually well grounded.'" *City of Pontiac,* 865 F. Supp. 2d at 824 (*citing In re Ford Motor Co. Sec. Litig. Class Action*, 381 F.3d 563, 572 (6th Cir. 2004) (quoting *Helwig v. Vencor, Inc.*, 251 F.3d 540, 562 (6th Cir. 2001), *overruled on other grounds by Tellabs*, 551 U.S. at 323-24). As explained above, Plaintiff has failed to allege sufficient facts to show that the claimed speakers–Gemunder, Froesel, and Workman–did not believe the opinion stated or had actual knowledge that Omnicare's legal compliance statements were not true. In addition, Plaintiff has failed to allege Omnicare knew the opinion of legal compliance was not true; Plaintiff's only allegation is based upon the imputed knowledge of the Stone audit results, which, similar to Form 483 in *City of Pontiac*, "is 'soft' information as to the existence of regulatory violations." 865 F. Supp. 2d at 826.

25

### (2)    No Duty to Disclose Alleged Illegal Actions

As in *Hod Carriers*, Omnicare had no duty to disclose its allegedly deficient claims submissions based on its statements of "material compliance."   In *Hod Carriers*, the plaintiffs argued that once Omnicare made its legal compliance statement, it was obligated to disclose its illegal drug-handling practices.  583 F.3d at 945.  The Sixth Circuit disagreed, finding not only did the complaint fail to sufficiently allege actual knowledge that the legal compliance statements were false, but that a generic claim of lawfulness remains "soft," not requiring disclosure of allegedly illegal activities because its materiality derives from predictions of third parties' actions.  *Id.* at 946-47.  Thus, where the allegations refer to the consequences of the conduct–here, a finding of material noncompliance– the allegations constitute "soft" information that does not give rise to a duty to disclose.  *See Zaluski*, 527 F.3d at 575.  *Sofamor* explains why this is true: "[i]f the company had publicly opined that its [conduct] was illegal, and if it had publicly predicted that the [agency] would move against the company, the . . . prediction would have proved to be flatly erroneous" as no regulatory action was ever initiated.  123 F.3d. at 402.

Similarly here, any statement predicting that Omnicare's submission of deficient claims for reimbursement constituted fraud would have proven to be erroneous; Stone's FCA claims have been dismissed, there are no indications of regulatory proceedings being initiated, nor other legal findings of material noncompliance regarding this conduct.  Thus, Omnicare's general compliance statements were "soft" information, and Omnicare was not required to make further disclosure.

Based on the foregoing, Plaintiff has not established that the compliance statements contained in the SEC filings are actionable.  Accordingly, Plaintiff's claim that Defendants'

statements regarding the risks associated with a finding of noncompliance are also misleading fails, because it is dependent on a finding that the compliance statements are actionable.

### b.     Defendant Gemunder's January 10, 2007, Statement

Plaintiff alleges that Defendant Gemunder's January 10, 2007, statement to analysts at a JP Morgan Healthcare Conference[6] that Omnicare's goal was compliance with all laws and regulations and that it was getting "these matters" behind them was materially false and misleading when made.    (Doc. # 94, ¶¶ 88-89).    Specifically, Plaintiff alleges Gemunder stated:

> . . . [W]e operate in a highly regulated industry with a significant amount of government oversight, and **our goal is to comply with all laws and regulations**. As part of the normal course of business, we and our industry peers, deal with government reviews and inquiries on a regular basis. And here **I'm pleased to report that we are getting these matters behind us.** * * *
> So, to sum it up, 2006 was quite a year with a number of seemingly unrelated issues affecting our business, but there are two important points I want to make here. First, despite the incremental costs required, patients continue to receive the service in pharmaceutical care they need and which they deserve. And second, **we are, and will continue to work through these issues and believe that they will ultimately be resolved. We do not believe these issues alter the earnings power of the company, but rather they temporarily mask it. We believe the fundamentals of our business and the soundness of our strategy remain in place.**

(*Id.*, at ¶ 88).  Plaintiff's Complaint alleges the statement is actionable because Gemunder knew these statements were false, given his knowledge of ongoing Medicare and Medicaid fraud.  *(Id.* at ¶ 89).

---

[6] Gemunder's statement at the JP Morgan Healthcare Conference was referenced in the Complaint herein and therefore the entire transcript of the statement has been considered  by the Court in adjudicating the Motion to Dismiss.  *See Tellabs*, 551 U.S. 322.

The results of the Stone audits cannot be the basis of Gemunder's knowledge in January 2007 because they had not yet been performed. Moreover, as discussed above, there are no particularized factual allegations that demonstrate Gemunder had actual knowledge of any specific irregularities in Omnicare's claims practices at the time he made this statement.

It is also unclear how Gemunder's knowledge of federal investigations and settlements would render these statements misleading and false at the time they were made. A review of the entire paragraph reveals that after Gemunder stated "we are getting these matters behind us," he explained how by discussing the October and November 2006 government settlements regarding the various issues. Specifically, he stated:

> Now, on top of this transition of Part D, we've also been dealing with several regulatory matters. On this topic, let me first remind you that like most healthcare services companies, we operate in a highly regulated industry with a significant amount of government oversight, and our goal is to comply with all laws and regulations. As part of the normal course of business, we and our industry peers, deal with government reviews and inquiries on a regular basis. **And here I'm pleased to report that we are getting these matters behind us. On October 5, we entered into a voluntary settlement with the State of Michigan to resolve certain billing issues under its Medicaid program. On November 14, we reached a voluntary civil settlement with the federal government in certain states related to generic drug substitution issues. Neither of these settlements includes any finding of wrongdoing or any admission of liability and both were fully reserved.**
>
> And last, as we've already discussed, **we're continuing to work with the U.S. Attorney's Office in Massachusetts,** which is seeking information about our relationships with certain manufacturers, pharmaceutical manufacturers and distributors of pharmaceutical products, and certain customers as well as information related to contracts with certain companies we acquired. As always, we are cooperating with the government and there really is no more to say about any of this except to say that we believe we've complied [with] all applicable laws and regulations in respect to all of these matters.

28

(Doc. # 117-3, at 4) (emphasis added). Gemunder's complete statement would seem to add credence to his statement that Omnicare was getting issues regarding regulatory matters behind it as it was settling the issues.

Plaintiff argues that Gemunder would have known his statements were false when made because he was aware of the DOJ's investigation into Omnicare's relationships with pharmaceutical manufacturers and distributers at the time he made his statement. However, as Plaintiff admits, immediately after stating it was getting regulatory issues behind them, Gemunder discussed Omnicare was working with the United States Attorney's Office (USAO) in Massachusetts on this issue. Gemunder's statement therefore cannot be deemed to have been a basis for misleading investors, since at the same time he made the allegedly misleading statement he discussed the DOJ investigation.

Moreover, his statements are similar to those the Sixth Circuit found in *Hod Carriers* were not actionable. 583 F.3d at 943. There, Gemunder stated "Omnicare's revenue and earnings growth outlook remains positive given our strong underlying fundamentals and our proven growth strategy." Plaintiffs alleged the statement was misleading because he failed to disclose its contractual dispute with a major prescription drug-plan sponsor. The Court found Gemunder's statement to be both forward-looking and corporate puffery that vaguely predicted positive future results; not a material misstatement or omission. *Id.*

Similarly here, Gemunder's statement was "our goal is to comply with all laws and regulations." This is the type of corporate puffery one would expect to hear from a corporate manager; that is, "loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important." *Id.* at 944.

29

The same is true for Gemunder's statement that "we are getting these matters behind us." If one looks at the entire paragraph, Gemunder made this statement and immediately began discussing how Omnicare was getting the issues behind it. Specifically he explained Omnicare was "continuing" to work with the USAO in Massachusetts regarding an investigation it was conducting and explained the settlements on other regulatory matters. He did not say all these matters are behind us, but indicated an ongoing effort toward that end. Again, this was a statement of corporate optimism that Gemunder believed they were getting the issues resolved. In addition, there are no specific factual allegations to suggest Gemunder had actual knowledge at the time he made the statement that the statement was not true.

Plaintiff cites a District of Minnesota case that found statements deemed puffery were actionable where they were provided in direct response to a financial analyst's questions. *In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 888 (D. Minn. 2011). Here, while Gemunder was addressing analysts at a conference, he was not responding to specific questions but was giving a corporate overview of Omnicare's business. Moreover, Plaintiff cites no case from the Sixth Circuit, nor did the Court or Defendants find one, recognizing an exception rendering statements of corporate optimism as being actionable where made in response to an analyst's questions.

In sum, Plaintiff has failed to adequately plead that the contested statements were false, particularly when they are considered in the context of Gemunder's entire January 10, 2007 statement, nor has Plaintiff sufficiently plead that the contested statements are the type a reasonable investor would view "as having significantly altered the total mix of information made available;" thus, they are not actionable. *See Hod Carriers*, 583 F.3d at

30

943.

### c.   Omnicare's Financial Results, Stated Reasons for its Success and SOX Certifications

Plaintiff asserts that Omnicare made material misrepresentations and/or omissions by attributing its success to legitimate business factors while omitting the effect of its fraudulent submissions to Medicare and Medicaid.  (Doc. # 94, at ¶¶ 101-134).  In addition, Plaintiff alleges Omnicare's reported financial numbers are also materially false and misleading because they improperly include the proceeds of the alleged Medicare and Medicaid fraud.  (*Id.* at ¶¶ 137-163).

Despite Plaintiff's assertions, during oral argument Plaintiff conceded that it is not challenging the accuracy of the numbers.  (Doc. # 135, at 77).  It also acknowledged that the success of its financial misrepresentation claims is derivative of this Court finding that the legal compliance statements are actionable.  (*Id.*, at 77-78).  Therefore, Plaintiff's claims regarding the financial reports fall for the same reasons as its legal compliance claim; Omnicare's statements that its billing practices materially comply with state and federal regulations were "soft" information not requiring further disclosure absent particularized factual allegations of actual knowledge of illegality or a fraudulent scheme. Moreover, Omnicare's financial data was historically accurate, and it was not required to report that the alleged illegal conduct was a factor in its success. *Sofamor*, 123 F.3d at 400-01; *Almost Family*, 2012 WL 443461, at ** 3-4.

Similarly, Plaintiff's allegations that Defendants Gemunder, Froesel, and Workman made false statements concerning the accuracy of Omnicare's class period 10-K and 10-Q filings by executing certifications pursuant to Sections 302 and 902 of the Sarbanes-Oxley

Act attesting to the accuracy of the financial reports also fail.  Specifically, Plaintiff has not asserted sufficient facts to demonstrate that the Individual Defendants had actual knowledge that the company was in violation of any laws or regulations or that there were any errors in its SEC filings at the time they executed the certifications.

### B.     Plaintiff's Claim Under § 20(a) is Dismissed

Plaintiff also seeks to hold Defendants Gemunder, Froesel, Workman and Hodges liable as "controlling persons" of Omnicare under § 20(a) of the Securities Exchange Act. "Controlling person" liability is derivative, and a plaintiff "may hold a defendant liable under this theory only if the defendant controlled an entity that violated the Securities Act." *D.E. & J. Ltd. P'ship v. Conaway*, 133 F. App'x 994, 1001 (6th Cir. 2005); *see also Hod Carriers*, 583 F.3d at 947.  Thus, the Court having found that  Plaintiff has failed to state a claim for securities fraud, its § 20(a) claim fails as well.  *D.E. & J. Ltd. P'ship*, 133 F. App'x at 1001.

### C.     Mandated Rule 11 Review

In addition to raising the standard for pleading scienter, the PSLRA "mandate[s] imposition of sanctions for frivolous litigation."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006). The PSLRA provides:

> In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

15 U.S.C. § 78u–4(c)(1).  The Court has conducted this review and finds the parties and attorneys have not violated the mandates of Rule 11(b).

32

### D.      Plaintiff's Informal Request to Amend is Denied

In its post-hearing memorandum, Plaintiff requested "leave to

replead" if the Court concludes it has inadequately pled the knowledge of the non-

defendant executives.  Rules 7 and 15 of the Federal Rules of Civil Procedure require

motions for leave to amend must state with particularity the grounds for seeking an order

granting leave.  Plaintiff has not, however, filed a motion for leave to amend.  The Sixth

Circuit has held that an informal request contained in a opposition memorandum to a

motion to dismiss is not a substitute for a properly filed motion.  *See Louisiana Sch. Emp.*

*Ret. Sys.*, 622 F.3d at 486 (affirmed district court's denial of informal request to amend);

*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698-700 (6th Cir. 2004), *abrogated on other*

*grounds* by *Frank v. Dana Corp*, 646 F.3d 954, 961 (6th Cir. 2011).

Even if Plaintiff had properly filed a motion for leave to amend its Complaint, the

request would be unnecessary because the Court has assumed for purposes of the Motion

to Dismiss that knowledge of the non-defendant executives has been properly pled.

Accordingly, Plaintiff's informal request to amend will be denied.

### E.      Jacksonville's Motion for Creation of a Subclass is Denied as Moot

After the filing of the Consolidated Amended Complaint, Jacksonville filed a Motion

for Creation of a Subclass (Doc. # 108), asserting that a subclass is necessary to protect

the claims of class members that sold their Omnicare stock after partial disclosures, which

disclosures have not been asserted in the Complaint.  Jacksonville argues that without the

creation of the subclass the claims of these members will not be litigated.

During oral argument, Jacksonville's counsel confirmed that its claims are based on the same material misrepresentations as Plaintiff has alleged.  (Doc. # 135, at 86).  Thus, for the reasons stated above, the claims of the members of Jacksonville's proposed subclass are also subject to dismissal for failure to adequately plead an actionable misrepresentation.  Accordingly, the Motion to Create a Subclass will be denied as moot.

## IV.    CONCLUSION

In summary, Plaintiff has failed to plead sufficient facts to establish an actionable misstatement or omission.  In light of this failure, whether to create a subclass is of no moment.  Accordingly,

**IT IS ORDERED** that:

1.      Defendants' Motion to Dismiss (Doc. # 106) is hereby **GRANTED**;

2       Plaintiff's informal request to "replead" (Doc. # 137) is hereby **DENIED**;

3.      Jacksonville Police and Fire Pension Fund's Motion for Creation of a Subclass (Doc. # 108) is hereby **DENIED AS MOOT**; and

4.      This matter is hereby **DISMISSED WITH PREJUDICE**, and stricken from the Court's active docket.

This 27th day of March, 2013.



Signed By:

_David L. Bunning_

United States District Judge

G:\DATA\Opinions\Covington\2011\11-173 MOO granting MTD and denying mtn for creation of subclass.wpd